Antonio Rodríguez Montalvo, Petitioner, *v.* District Court of Mayagüez, Respondent.

No. 34. Argued December 3, 1945.—Decided February 5, 1946.

*Pedro Santana, Jr.,* and *Martín Avilés Bracero* for the Department of Labor and the petitioner. *J. Alemañy Sosa* for intervener. defendant in the main action.

Mr. Chief Justice Travieso delivered the opinion of the court.

In his complaint filed in the Municipal Court of San Germán, the petitioner herein alleged that he was employed as a milker in the dairy belonging to Miguel Carlo Pabón from May 24, 1943, to October 21, 1944, at an agreed salary of $6 per week; that the contract between him and his employer had no fixed or definite term of duration; and that on October 21, 1944, notwithstanding the plaintiff had discharged all the duties of his employment, the defendant, without just cause or justifiable ground, discharged him from said employment without first paying him the one month's salary to which the plaintiff claims to be entitled in accordance with the provisions of Act No. 84. approved May 12, 1943 (Laws of 1943, p. 356).

The defendant denied that the plaintiff had worked *at a salary* of $6 weekly, and on the contrary alleged that the plaintiff worked on the basis of *daily wages or salary* which he collected for the days he worked, and for this reason the provisions of said Act No. 84 of 1943 do not apply to him.

Upon the case being decided against the defendant, he took an appeal to the District Court of Mayagüez. The parties submitted the case upon a stipulation setting forth the following facts: (1) That the plaintiff worked at a daily wage or salary of one dollar ($1.00) and collected it weekly according to the number of days he had worked; and (2) that he had been discharged from the employment as alleged in the complaint, without just cause.

The district court rendered judgment for the defendant, and the plaintiff thereupon applied to this court for a writ of certiorari, which we issued because we deemed the case to be comprised within the provisions of Act No. 32, approved May 3, 1943.

Section 1 of Act No. 43, approved April 28, 1930, provided:

"Every *employee* of an industry or other lucrative business whose services are contracted for without a definite term, and whose *salary* is agreed upon by the month, fortnight or week, who is discharged

without just cause and without previous notice served at least fifteen days prior to his discharge, shall be entitled to receive from his principal or employer such *salary as he may have earned* and one month's, one fortnight's, or one week's additional salary as the case may be; *Provided,* That the provisions of this Act shall not be applicable to commercial shop-clerks or factors, to whom the provisions of the Code of Commerce shall apply." (Italics ours.)

On May 12. 1943, there was approved Act No. 84 (Laws of 1943, p. 196), whereby the above-quoted § 1 was amended to read as follows:

"Section 1.—Every *employee* of an industry or other lucrative business whose services are contracted for without a definite term, who is discharged without just cause, shall be entitled to receive as indemnity from his employer, in addition to such *salary* as he may have earned, one month's salary; *Provided,* That the provisions of this Act shall not be applicable to commercial shop-clerks or factors, to whom the provisions of the Code of Commerce shall apply." Italics ours.)

From a comparison between the texts of both Sections, we find the following: Under Act No. 43 of 1930, an *employee* whose services had been contracted for without the contract of employment fixing any definite time for its duration, upon being discharged from his employment without just cause, was entitled to receive from his principal or employer the payment of (*a*) such *salary* as he might have earned at the time of his discharge and (*b*) one month's on fortnight's, or one week's additional *salary* according to whether the salary was agreed to be paid by the month, fortnight, or week.

According to the amendatory statute, Act No. 84 of 1943, an *employee* who has been hired for an indefinite time and who is discharged from his employment (*cargo*) without just cause, is entitled to receive an idemnity from his employer, in addition to such compensation as the latter may owe him for services already rendered, "one month's salary," irrespective of the form of payment which may have been agreed.

The essential requisites for a claimant to be entitled to indemnity under § 1, *supra,* are: (*a*) to have been employed without a contract fixing a definite term. in an industry which continues its operation or business; and (*b*) to have been discharged without just cause. Section 1 in its original form provided an additional requisite. An employee of an industry was entitled to make such claim only if, under the contract of employment, his salary was paid by the week, fortnight, or month. It is evident, therefore, that according to the original Section an employee who worked on the basis of a certain salary or wage for each day of work, was not entitled to an idemnity upon being discharged from his position or employment without just cause.

When § 1 of Act No. 43 of 1930 was amended by Act No. 84, approved May 12, 1943, *supra,* the requisite regarding the weekly, fortnightly, or monthly payments was eliminated therefrom. In accordance with this Section, the claimant shall be entitled to the indemnity if he proves to the satisfaction of the court that he was hired, without a definite term of employment, to work in an industry or other lucrative business; that he was discharged from his employment without just cause; and that the industry or business has continued in operation.

There is no dispute as to the fact that at the time the petitioner was dismissed from his employment without just cause, he was working as a milker in a dairy, which was operated as an industry or lucrative business by the defendant, intervener herein, Miguel Carlo Pabón. Nor is it disputed that the petitioner worked for said employer for a long period of time, from May 24, 1943, to October 21, 1944—the day on which he was discharged—that is, during a period of nearly seventeen consecutive months; that the contract did not provide any definite term for its duration; and that the petitioner received $1 for each day of work, his compensation

being paid weekly to him according to the number of days worked by him during the week.

If the lawmaker had been careful to express in clear and concise language the fundamental purpose of the amendment under discussion, the determination of the case now before us would not present any difficulty.

The intervener employer maintains—and it was so held by the lower court—that, since the petitioner was employed as a *workman* (*obrero*) in his occupation as a milker, and for a *salary* or *wage* of $1 per day, his claim is not covered by Act No. 84 of 1943, for the latter applies only to an employee who holds a situation or position (*cargo*) on a *salary* basis.

The questions to be considered and decided are: (*a*) whether a milker in a dairy "is an employee" of an industry or other lucrative business whom the lawmaker had in mind when drafting Act No. 84 of 1943; and (*b*) whether in passing the Act of 1930 and the amendment of 1943, granting indemnity to "every *employee* of an industry or other lucrative business" who has been discharged without just cause, the lawmaker used the term "employee" in a restrictive or limited sense so as to include only an industrial employee "who holds a technical or bureaucratic position," or whether it was the legislative intent to extend the protection of the statute to all persons employed in an industry or lucrative business, irrespective of the kind of work in which they are engaged or the manner in which the compensation is paid, provided that their employment is regular and continuous, and does not involve services which are casual, incidental, or occasional, or which must be rendered within a definite period of time.

We accept as correct the rule that the safest mode of interpreting the word employee, as used in this kind of statutes, is "to take into the account the cause for the passage of the act, so far as it may be ascertained, and the evil sought by the act to be remedied." *Empcy* v. *Yost*, 44 P. (2d) 774, 775,

182 Wash. 17; *Meek* v. *Julian*, Ind. App. 32 N.E.(2d) 737, 739; *Dept. of Industrial Relations* v. *Drummond*, Ala. App., 1 So. (2d) 395, 401.

During the last thirty or more years, the tendency of the social legislation enacted by the Insular Legislature has been to elevate and dignify labor, and to give greater protection to the man, who in order to support himself and his family, is compelled to work for another in exchange for a salary, stipend or wages, or whatever the name given to the compensation or remuneration which he receives for his work. With that end in view were enacted the laws providing for the payment of workmen's accident compensation; fixing minimum wages; limiting the number of hours of the working day; and numerous other laws which tend to protect the life of the workman and to promote his safety from labor or industrial accidents. Up to the passage of the Act under discussion, nothing or very little had been done to secure to the workman the certainty and permanency of his employment, or to protect him in case he were discharged therefrom without just cause, by insuring the receipt by him of his compensation—the support of his family—during a reasonable period of time until he should be able to obtain a new employment.

We are not inclined to presume and much less to believe or hold that it was the intention of the Legislature to grant the protection and guaranty of the statute to the technical and bureaucratic employees of an industry, that is, to those who receive the higher salaries while denying them to the workman who receives a daily wage, who works on the fields, in the factories and about the machines of the industry and who daily exposes his health and life to risk in order that the industry may live and prosper. We can not believe that the lawmaker intended to leave unprotected an employee, who, after serving his employer for a substantial period of time in a position of a continuing and permanent character, is dismissed without just cause while the industry continues to

operate. We are of the opinion that, when using the phrase "every employee 'of an industry or of any other lucrative business," the lawmaker had in mind not only the technical and bureaucratic employees of an industry, but also all the workmen employed therein whose services are contracted for without a definite term, and not engaged in casual, incidental, or occasional work.

Nor are we convinced by the argument of the intervener, to the effect that the statute applies only to an employee who has been discharged from a *position* (*cargo*), that is, "from a fixed occupation of some importance involving dignity, employment, or trade, according to the definition set forth in the Dictionary of the Spanish Academy" and that, as the work of milking cows is not a *position* (*cargo*), the petitioner herein has no right to the indemnity claimed by him.

For the same reasons already stated, we are of the opinion that by the use of the word *"cargo"* (in the Spanish text of the Act) the lawmaker did not intend to limit the operation of the Act to those employees of an industry who hold positions or employments of a technical or bureaucratic character. It is true that according to the Dictionary of the Spanish Academy the word *"cargo"* is employed to mean an important occupation having a certain dignity attached thereto; but it is no less true that according to the familiar and ordinary language of our people, the term *"cargo"* is frequently used as a synonym of "employment," "occupation," and "trade." Why should we presume that the lawmaker used said term in a narrow and grammatical sense in order to limit the scope of the Act, and not in a broader and more liberal sense so as to place under the protection of the statute those who need that protection most?

The last contention of the intervener is still less meritorious. He insists that the statute applies only to those

employees who receive a *salary;* and that therefore it does not apply to the petitioner, who received wages for each day of work.

Here is a new conflict between the language of the dictionary and that ordinarily used by the people. The words "salary" and "wages," are employed to mean the same thing—the stipend paid to a worker as compensation for his services. "Salary" and "wages" are indiscriminately used to mean the weekly, fortnightly, or monthly payments made to workmen and employees. "Salary" and "wages" are also used indiscriminately to mean the stipend received by a workman for a full day's work; and thus we see that the Legislature has passed an Act creating a Minimum Wage Board and not a Minimum Salary Board. Since the lawmaker has failed to insert in the statute a definition of the term "salary," why should we suppose that said term was used in a restrictive sense, to mean solely and exclusively the stipend paid to a workman by the month, fortnight, or week? Why should we ot assume—especially if we take into account that in the amended statute all reference to weekly, fortnightly, or monthly payments was eliminated—that when the lawmaker said that the workman "shall be entitled to receive as indemnity from his employer, in addition to such *salary* as he may have earned, one month's *salary,* "the term" "salary" was used to mean the amount received by the workman for one month's work, irrespective of whether the payments were made to him by the day, week, or month? A restrictive interpretation would lead us to absurd situations. For instance, a workman who earns $1 a day and who works thirty days during the month and hence receives $30 monthly would not be entitled to the indemnity. Yet a workman who under his contract earns $15 a fortnight and thus receives $30 each month would have the protection of the statue upon being discharged without just cause. We can not accept that such has been the intention of the lawmaker.

584

We are of the opinion that, under the facts and circumstances of the instant case, the petitioner is entitled to the indemnity claimed by him. The lower court erred in dismissing the complaint and, therefore, the judgment sought to be reviewed should be set aside and the case remanded to the lower court for further proceedings not inconsistent with this opinion.

Mr. Justice Córdova did not participate herein.